# Exhibit B

March 17, 2025, Commonwealth's
Motion for Buffer Zone
*Commonwealth v. Read*

611

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                    SUPERIOR COURT DEPARTMENT
                                                DOCKET NO. 2282-CR-0117

COMMONWEALTH

v.

KAREN READ

**COMMONWEALTH'S MOTION FOR BUFFER ZONE AND ORDER PROHIBITING SIGNS OR CLOTHING IN FAVOR OF EITHER PARTY OR LAW ENFORCEMENT**

During the defendant's first trial, the Court established a buffer zone in which demonstrations were prohibited within 200 feet of the courthouse complex. The Commonwealth requests that this buffer zone be re-established for the defendant's upcoming retrial, but with two important modifications. First, on the western side of the courthouse facing Court Street, the extent of the buffer zone was inadequate to prevent such demonstrations from jeopardizing the integrity and fairness of the proceedings; the demonstrations could be heard inside the courthouse, including by the jurors during their deliberations. To prevent this from reoccurring, the Commonwealth requests that the buffer zone be extended to include the area encompassed within Bates Court, Bullard Street, Ames Street, and Court Street. Second, the Commonwealth requests that the Court's buffer zone order expressly include a mechanism for its enforcement. Where a person is believed to have violated the buffer zone provision, and has refused requests to comply, law enforcement personnel should be authorized to use reasonable physical force and to arrest that person to ensure compliance.

Additionally, the Commonwealth requests that the Court again order that individuals are not permitted to wear or exhibit any buttons, photographs, clothing, or insignia, relating to the case or to any trial participant, in the courthouse during the retrial.

## Background

On March 26, 2024, the Commonwealth moved for an order barring demonstrations within a buffer zone of 500 feet around the courthouse complex, and prohibiting certain items from being worn or displayed inside the courthouse, during the defendant's first trial. (Dkt. 254). A group of individuals moved to intervene in the case to oppose the Commonwealth's request. (Dkt. 265). The American Civil Liberties Union of Massachusetts, Inc. ("ACLUM") sought leave to file an "*amicus curiae* memorandum," essentially in opposition to the request. (Dkts. 266, 267). The defendant took no position on the matter.

Following a hearing on April 4, 2024, the Court denied the motion to intervene, granted the ACLUM leave to submit its memorandum (which the Court noted it had read), and ordered that:

> "no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. Individuals are also prohibited from using audio enhancing devices while protesting"

and

> "no individuals will be permitted to wear or exhibit any buttons, photographs, clothing, or insignia, relating to the case pending against the defendant or relating to any trial participant, in the courthouse during the trial. Law enforcement officers who are testifying or are members of the audience are also prohibited from wearing their department issued uniforms or any police emblems in the courthouse."

(Dkt. 274) (the "buffer zone order," copy attached as Exhibit A).

The would-be intervenors filed a petition for extraordinary relief pursuant to G.L. c. 211, § 3, in the Supreme Judicial Court for Suffolk County, challenging both the denial of intervention and the buffer zone order (case no. SJ-2024-0122). Soon thereafter, a second petition under G.L. c. 211, § 3, was filed by an association of individuals who wished to demonstrate in the buffer

zone during the trial and two members of the association (case no. SJ-2024-0123). The Commonwealth opposed the petitions, and the defendant again took no position.

On April 12, 2024, a single justice of the Supreme Judicial Court denied the petitions. See memorandum of decision and judgment, copy attached as Exhibit B. The single justice held that the denial of the motion to intervene was "an ordinary procedural ruling" not requiring the Court's extraordinary intervention and therefore denied any relief from that ruling. The single justice also determined, on the merits, that the buffer zone order passed constitutional muster and did not violate the petitioners' First Amendment rights. Specifically, the establishment of the buffer zone was a content-neutral and reasonable time-place-manner restriction on speech that was narrowly tailored to serve a significant governmental interest and that left open ample alternative channels for communication of information.

The petitioners appealed the single justice's judgment to the full Supreme Judicial Court (case no. SJC-13589). The Commonwealth filed a response; the defendant further declined to take a position. On April 26, 2024, the full Court issued an order affirming the judgment, and on May 2, 2024, it issued an opinion stating the reasons for that order. See Spicuzza v. Commonwealth, 494 Mass. 1005 (2024). The Court held that the single justice did not commit an error of law or abuse his discretion in determining that the denial of the motion to intervene was not a matter warranting the Court's exercise of its extraordinary power of general superintendence. See id. at 1007. As to the petitioners' constitutional arguments, the full Court similarly concluded that the restriction created by the buffer zone was content neutral and not a prior restraint on speech, it was narrowly tailored to serve a significant governmental interest, and it left open ample alternative means of communication. See id. at 1007-1008.

## Discussion

The factual circumstances and concerns that necessitated the creation of the buffer zone last time are no less present or compelling today.  This case continues to garner significant public interest and media attention, locally and nationally, and is the subject of commentary on various social media platforms.  The proceedings are still attended by groups of individuals demonstrating in front of the courthouse, displaying references to materials that may or may not be introduced in evidence at retrial, and airing their opinions as to the trial judge, prosecutors, witnesses, and the guilt or innocence of the defendant on their clothing or on signage.  Shown below, for example, are photographs of demonstrators who appeared (despite the inclement weather) at the hearing on February 6, 2025:







In addition, and as the Court found when it issued the buffer zone order, protesters have

shouted at witnesses and have confronted family members of the victim. Witness intimidation

also remains a prevalent issue in this case, with additional criminal charges having been filed

earlier this month. See Commonwealth v. Aidan Kearney, Stoughton Dist. Ct. No. 2555-CR-

225. See also Affidavit of Juror Doe (Dkt. 380) (describing efforts by individuals to intimidate,

harass, and "dox" jurors following declaration of mistrial). The re-establishment of a buffer zone

is therefore necessary to help ensure that both parties receive a fair retrial, free from outside

influences. See Spicuzza, 494 Mass. at 1009, citing Commonwealth v. Underwood, 358 Mass.

506, 511 (1970) (noting the Commonwealth too has the right to, and an interest in the defendant

receiving, a fair trial, and the buffer zone order also supported that right).

During the first trial, the 200-foot extent of the buffer zone was adequate to prevent any

demonstrations occurring on the southern, eastern, and northern sides of the courthouse complex

from interfering with the proceedings inside the courthouse. See Affidavit of Massachusetts

State Police Sergeant Michael W. Hardman ("Aff."), filed herewith, at ¶ 3. On the western side

of the complex, however, it proved to be inadequate. On that side there are larger, open spaces

that extend beyond 200 feet from the courthouse—in particular, the paved and grassy areas along

High Street between Bullard Street and Ames and Court Streets. These areas are shown in the

Google Maps screenshot below, along with a red line superimposed to indicate the extent of the

200-foot buffer zone on that side of the complex:



(Aff., ¶ 4). Groups of demonstrators gathered in these areas, presumably with the property

owners' permission, and engaged in coordinated shouting and chanting aimed directly at the

courthouse. (Aff., ¶ 5). Even when standing just outside the buffer zone, these demonstrators

could be heard inside the courthouse, including during deliberations. See Aff., ¶ 5; Affidavit of

Juror Doe at ¶ 10 ("During jury deliberations we could hear protesters outside screaming and

yelling.").

As another consequence of the 200-foot extent of the buffer zone, individuals positioned

in these areas were close enough to Court and Ames Streets to encourage passenger and

commercial vehicles traveling on those streets to honk their horns as a form of demonstration.

(Aff., ¶ 6). This happened repeatedly, and the honking—especially from the air horns of the

6

commercial vehicles—could easily be heard inside the courthouse. (Aff., ¶ 6).[1] In connection with the first trial, the Massachusetts State Police issued more than two dozen citations for horn violations and other motor vehicle offenses. (Aff., ¶ 6).

To maintain the integrity of the retrial proceedings, and to prevent witnesses and prospective or seated jurors from being subjected to these demonstrations, the Commonwealth requests that the buffer zone on the western side of the courthouse complex be extended to include the area encompassed within Bates Court, Bullard Street, Ames Street, and Court Street. The extended buffer zone would range from approximately 300 feet between the northern ends of the complex and Bullard Street to roughly 400 feet between the complex and Bullard Street along High Street. (Aff., ¶ 7). This would bring within the buffer zone those areas where demonstrations undermined the buffer zone's very purposes, while at the same time ensuring that demonstrators are not moved any farther away from the courthouse complex than is necessary to prevent those same issues from recurring. It is narrowly tailored to address the specific problems that were encountered from experience at the first trial, and it will still leave open ample alternative channels of communication and outlets for demonstrations.

The Commonwealth also requests that the order re-establishing a buffer zone expressly state that a violation of any of the provisions of the order may constitute contempt of court and that law enforcement officers are authorized to enforce compliance with the order by using reasonable physical force and arresting any person who officers reasonably believe to be in violation of the order and who has refused to follow officers' prior verbal requests to comply. Officers will continue to seek compliance in the first instance through verbal requests and the use

---

[1] This continues to be a demonstration tactic, as shown in the above photograph of the individual at the February 6 hearing who is holding up a sign that says, "Honk for Justice." Frequent honking has occurred at nearly every hearing held in this case over the past several months and has been clearly audible in the upstairs courtrooms.

of de-escalation techniques to the maximum extent possible. (Aff., ¶ 8). But where an

individual refuses to comply, officers need to be able to use reasonable physical force and to

make an arrest to ensure compliance with the order and to avoid jeopardizing their own safety

and that of the public. (Aff., ¶ 8). The order itself may provide that authorization. See

Commonwealth v. Williams, 439 Mass. 678, 686 (2003), citing Commonwealth v. Garner, 423

Mass. 735, 745-746 (1996) (courts may authorize law enforcement personnel to use reasonable

force to carry out lawful orders, and courts are not constitutionally required "to prescribe with

exactitude the particular degree of force to be used" in carrying out orders).

For these reasons, the Commonwealth respectfully requests that the Court allow this

motion and issue an order with the following (or substantially similar) terms:

- The Court hereby establishes a "buffer zone" around the courthouse complex during retrial of this case. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. The buffer zone extends 200 feet from the courthouse complex and further includes the area encompassed within Bates Court, Bullard Street, Ames Street, and Court Street. No individual may demonstrate in any manner, including carrying signs or placards, within the buffer zone, unless otherwise ordered by this Court. Individuals are also prohibited from using audio enhancing devices while demonstrating.

- No individual will be permitted to wear or exhibit any buttons, photographs, clothing, or insignia, relating to the case pending against the defendant or relating to any trial participant, in the courthouse during the retrial. Law enforcement officers who are testifying or are members of the audience are also prohibited from wearing their department issued uniforms or any police emblems in the courthouse.

- A violation of any provision of this Order may constitute contempt of court. Court officers may eject or exclude entry to any person believed to have violated the provision against wearing or exhibiting certain clothing or items in the courthouse. Any person believed to have violated the buffer zone provision of this Order, and who has refused a prior verbal request by law enforcement personnel to comply with that provision, may be subject to arrest. Law enforcement personnel may use reasonable physical force where necessary to compel such person's compliance with that provision.

Respectfully submitted
for the Commonwealth,

/s/ Hank Brennan
Hank Brennan
Specially Appointed Assistant District Attorney

/s/ Adam C. Lally
Adam C. Lally
Assistant District Attorney

/s/ Laura A. McLaughlin
Laura A. McLaughlin
Assistant District Attorney

Dated:  March 17, 2025

## Certificate of Service

I hereby certify that a copy of the foregoing was served on counsel for the defendant via email on March 17, 2025.

/s/ Hank Brennan
Hank Brennan
Specially Appointed Assistant District Attorney