UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERICA WALSH,<br><br>                    Plaintiff,<br><br>        v.<br><br>JOHN DOES 1, 2 & 3, JONATHAN FREEDMAN, RYAN WELSH, and MICHAEL HARDMAN, in their personal capacities<br><br>                    Defendants. | Civil Action No. 1:25-cv-11344-MJJ |

## AMENDED COMPLAINT

The Massachusetts State Police took an unconstitutional order in the Karen Read trial to force women to go nearly topless if their outerwear contains messaging they didn't approve of.

Superior Court Judge Cannone pretextually shut down all First Amendment activity within an ill-defined "buffer zone" declared on the streets, public walkways, public library, and private properties surrounding the Dedham Courthouse. Cannone entered the order, *ex parte*, enjoining Plaintiff (and everyone else), who were not subject to her jurisdiction, from speaking on private property and on traditional public fora.  It was a lawless, *ultra vires* act, that violated constitutional guarantees of free speech and due process.  Cannone had no power to impose the buffer zone, and the zone was enforced in such a draconian manner that the Massachusetts State Police used it as license to accost, arrest, and prosecute members of the public and to shut down even the quiet speech of a woman walking peacefully, with words on her sweatshirt that offended the Police.

To remedy this wrong, Plaintiff, ERICA WALSH, brings suit against the JOHN DOES 1, 2 & 3, Jonathan Freedman, Ryan Welsh, and Michael Hardman (Massachusetts State Police officers) in their personal capacities.

Plaintiff brings claims under 42 U.S.C. § 1983 for Defendants' violation of her First and Fourth Amendment rights, and alleges as follows:

## THE PARTIES

1. Plaintiff Erica Walsh is a natural person who resides in Massachusetts.

2. Defendant John Doe 1 is an officer with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

3. Defendant John Doe 2 is an officer with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

4. Defendant John Doe 3 is an officer with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

5. Defendant Jonathan Freedman is an officer with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

6. Defendant Ryan Welsh is an officer with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

7. Defendant Michael Hardman is an officer with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this civil action per 28 U.S.C. § 1331 as this is a civil action arising under 42 U.S.C. § 1983 and the First and Fourth Amendments to the U.S. Constitution.

9. This Court has personal jurisdiction over all defendants as they are all citizens or organs of the Commonwealth of Massachusetts, and the defendants committed the acts complained of within the said Commonwealth.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) & (2) as all defendants reside in this District and all events giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

**1.0  General Background**

11. On or about January 29, 2022, John O'Keefe, a Boston Police Officer, died.

12. On or about June 9, 2022, a true bill was returned in the Trial Court of the Commonwealth of Massachusetts, Superior Court Department, Norfolk County, indicting Karen Read and charging her with a) second degree murder of O'Keefe per G.L. c. 265, § 1; b) killing O'Keefe with her motor vehicle while intoxicated per G.L. c. 265, § 13 ½; and c) a hit-and-run death of O'Keefe under. G.L. c. 90, § 24,(2)(a ½)(2).

13. Judge Beverly Cannone was the presiding judge in *Commonwealth v. Read,* Case No. 2282CR00017, in the Trial Court of the Commonwealth of Massachusetts, Superior Court Department, Norfolk County (hereinafter "*Read* Case").

14. A trial in the *Read* Case was held in 2024, which resulted in a mistrial after the jury failed to reach a unanimous decision (hereinafter "first trial").

15. A second trial in the *Read* Case began on April 1, 2025 (hereinafter "second trial").

16. Prior to the first trial, the Commonwealth filed a motion to *inter alia* create a "buffer zone" beyond the grounds of the Norfolk Superior Courthouse, to prohibit any individual from demonstrating in any manner about Read, law enforcement, the DA, potential witnesses, and evidence within 500 feet of the court complex during the trial.

17. Judge Cannone then issued an order granting the Commonwealth's motion, asserting that the Commonwealth's perceived inconveniences overcame everyone else's First Amendment rights, without regard for any differentiation between members of the public, and expressly ordered that "no individual may demonstrate in any manner, including carrying signs or

placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. Individuals are also prohibited from using audio enhancing devices while protesting." *See* **Exhibit A**.

18. Speech that did not qualify as a "demonstrat[ion]" was not restricted. Thus, a nearby café could advertise breakfast using a bullhorn and parade its menu on picket signs and placards; Celtics and Bruins fans could similarly honor their teams by hooting/hollering and carrying placards. And in fact, commercial speech was permitted within the zone.

19. In advance of the second trial, the Commonwealth again moved for a buffer zone, but with a larger area (again, encompassing private property and traditional public fora, including public sidewalks and other areas). The Commonwealth also sought specific instructions to request police to use force to quash any dissent or protest. *See* **Exhibit B.**

20. Without an opportunity for affected persons to intervene or be heard, Judge Cannone issued an Order on March 25, 2025, granting the Commonwealth's motion, asserting that the basis for the first motion warranted a *larger* buffer zone for the second trial, and expressly ordered that "no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. The buffer zone shall further be extended to include the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street. Individuals are also prohibited from using audio enhancing devices while protesting." *See* **Exhibit C** (hereinafter "Buffer zone injunction").

21. Judge Cannone lacked the authority to issue an order taking away anyone's First Amendment rights outside the courthouse, unless they were parties to the proceeding before her or in privity with them.

22. The U.S. Court of Appeals for the First Circuit indicated that the buffer zone order was not likely narrowly tailored due to the lack of a "*mens rea* requirement -- *i.e.,* it likely applies equally to speech directed toward random passersby and speech directed toward trial participants." *Grant v. Trial Court*, No. 25-1380, 2025 U.S. App. LEXIS 11261, at *9 (1st Cir. May 9, 2025).

23. On May 15, 2025, purporting to comply with the First Circuit's admonition, Judge Cannone issued a "Supplemental Order Regarding the Buffer Zone" which stated, in relevant part:

> [q]uiet, offsite [i.e. off-courthouse property] demonstrations on public property, in areas and at times that do not interfere with trial participants' entrance into or exit from the Courthouse, and that do not interfere with the orderly administration of justice, and that are not intended to influence any trial participants in the discharge of their duties are specifically outside the scope of the Buffer Zone restrictions.

*See* **Exhibit D**.

24. Massachusetts State Police officers took action to enforce the buffer zone order during the first trial, and the State Police, including Defendants, acted to enforce the Buffer zone injunction, both as originally propounded and as supplemented, during the second trial.

25. The buffer zone was employed against citizens, including Walsh, merely for wearing clothing with words on it that state police officers do not like.

**2.0   State Police Officers Interfere with Newsgathering and with Walsh Exercising her Clearly Established Rights**

   **A. May 9, 2025 Incident**

26. On Friday, May 9, 2025, Walsh was within the buffer zone created by the order of Judge Cannone in the Karen Read case.

27. Walsh had been there for several hours without incident.

28. During that period, she was wearing a sweatshirt that read "criminals control Norfolk County" and the logo "[mi cr od ots]".

29. The sweatshirt appears as below:



30. As Walsh was leaving a bathroom and heading to her vehicle that was parked within the zone, she was surrounded by three unknown Massachusetts State Police officers, Defendants John Doe 1, 2 & 3.

31. The Defendant officers detained Walsh, saying words to the effect of "you're not going anywhere."

32. At that point, one of the Defendant State Police officers stated he was going to charge Walsh with a criminal offense for wearing the sweatshirt, saying words to the effect of "You're gonna catch a charge."

33. The officers then falsely asserted that Walsh had been "warned" about the sweatshirt previously by Massachusetts State Police Sgt. Hardman.

34. Walsh had not, in fact, received any such warning.

35. However, at that point, Walsh faced the dilemma of either continuing to wear the sweatshirt or remove it.

36. Due to familial obligations that evening, Walsh could not afford to be arrested, so she removed the sweatshirt.

37. Below the sweatshirt, Walsh was wearing a shirt that read "Journalism is not a crime" and "Free Turtleboy" and included the face of noted Massachusetts journalist Aidan Kearney a/k/a Turtleboy.

38. A model version of the shirt appears as follows:



39. Walsh had asked an officer of the Dedham police whether this t-shirt was permitted within the buffer zone. He responded that he was not sure whether it was.

40. If the Dedham Police are unsure if a certain shirt violates the buffer zone, a person of ordinary firmness and intelligence could not be expected to divine its meaning.

41. Thus, in order to ensure Walsh could get to her car without being arrested, Walsh had no choice but to remove it and walk through the buffer zone clad only in a brassiere on top.

42. On May 28, 2025, this Court (Joun, J.) held that Ms. Walsh had a constitutional right to wear a sweatshirt stating "Criminals Control Norfolk County."

43. This Order should not have been necessary, as it was obvious to anyone that wearing such a shirt is protected speech. However, in the event there is even the slightest doubt, this Court's order made it specifically clear.

44. Specifically, he wrote "[g]eneral messages commenting or criticizing 'the system' whether that is the courts, the prosecuting agencies, or law enforcement agencies, to not constitute an intent to interfere with the administration of justice or an intent to influence a judge, juror, witness or court officer. Such messages criticize or call for change without referencing the outcome of the [Read] trial. Therefore, the display of 'Criminals Control Norfolk County' is constitutionally protected speech." *See* **Exhibit E**, *Grant v. Trial Court*, Case No. 1:25-cv-10770-MJJ (D. Mass. May 28, 2025) (slip op. at 17-18).

45. Judge Joun then enjoined the Massachusetts State Police from prosecuting Ms. Walsh for wearing the sweatshirt, stating:

> Law enforcement officers are enjoined from enforcing the Buffer Zone Orders in ways that are inconsistent with this decision. Prior to enforcement, law enforcement officers must be able to clearly articulate, without speculation, how any individual violated the Buffer Zone Orders, consistent with this decision.

*Id.* at 20.

### B. May 12, 2025 Incident

46. On Monday, May 12, 2025, Walsh was wearing the sweatshirt in the buffer zone.

47. As Walsh was exiting for the day, while walking with a YouTube content creator/journalist, Defendant Sgt. Hardman accosted Walsh and said words to the effect of "you're causing a …", though he never said what Walsh was causing, and that she was "told about this," threatening her for having worn the sweatshirt.

48. Upon information and belief, the only reason Walsh was not arrested by Sgt. Hardman for wearing the sweatshirt on May 12 was because an individual was filming the encounter.

49. However, Walsh was subjected to criminal proceedings on account of having worn the sweatshirt on May 12.

50. On May 13, 2025, Defendant Trooper Jonathan Freedman filed an Application for Criminal Complaint against Walsh in the Dedham District Court, Case No. 2554AC0563, alleging Trespass in violation of Mass. Gen. Laws, ch. 266, § 120, as a "Buffer Zone Violation." *See* **Exhibit F**.

51. The basis for the "trespass" was wearing the sweatshirt in the Buffer Zone.

52. Despite Judge Joun's May 28 ruling and injunction, Defendant Freedman did not dismiss his Application for Criminal Complaint, and this was itself contempt of court and a further demonstration of malice toward Walsh.

53. Walsh appeared at a hearing in the Dedham District Court before Magistrate Billingley on June 18, 2025.

54. The Magistrate denied Freedman's application and issued a finding of No Probable Cause, which was memorialized on June 20, 2025. *See* **Exhibit G**.

**C. May 19, 2025 Incident**

55. On May 19, 2025, Walsh was in the Buffer Zone walking by the Norfolk Registry of Deeds and sat on a cement slab in front of the Registry wearing a black sweatshirt with the words "Criminals Control Norfolk County" and a hat labeled "FKR".

56. Such was in the presence of Defendants Sgt. Hardman and Trooper Ryan Welsh.

57. When she got up to leave, Defendant Sgt. Hardman asked her if she would like to remove the sweatshirt or face arrest.

58. When she did not answer, Sgt. Hardman stated "You are under arrest" and arrested her.

59. Sgt. Hardman and Trooper Welsh then charged her with three purported offenses in the Dedham District Court, Case No. 2554CR00838: 1) Picketing (G.L. c. 268, § 13A); 2) Trespass (G.L. c. 266, § 120); 3) Disturbing the Peace (G.L. c. 272, § 53).

60. Charge 3 was dismissed on May 20 at the request of the Commonwealth.

61. Sgt. Hardman and Trooper Welsh did not seek to dismiss the charges after the May 28, 2025, injunction against him issued.

62. Nevertheless, on June 3, 2025, the Dedham District Court dismissed charge 1 for lack of probable case and charge 2 pursuant to the May 28 order. *See* **Exhibit H**.

### CAUSE OF ACTION
#### Count I
**Violation of the First Amendment to the United States Constitution: Retaliation**
**(42 U.S.C. 1983 – First Amendment)**
**(Against All Defendants)**

63. Plaintiff repeats and realleges each and every allegation in paragraphs 1-62 as if set forth fully herein.

64. The Doe Defendants' conduct of threatening Walsh on account of her May 9, 2025, constitutionally protected activity of wearing a sweatshirt is unconstitutional and violates her First Amendment right to freedom of speech and expression.

65. Trooper Freedman & Sgt. Hardman's conduct of threatening Walsh on account of her May 12, 2025, constitutionally protected activity of wearing a sweatshirt is unconstitutional and violates her First Amendment right to freedom of speech and expression.

66. Trooper Freedman's conduct of bringing criminal charges against Walsh on account of her May 12, 2025, constitutionally protected activity of wearing a sweatshirt is unconstitutional and violates her First Amendment right to freedom of speech and expression.

67. Sgt. Hardman's conduct of arresting and, with Trooper Welsh, bringing criminal charges against Walsh on account of her May 19, 2025, constitutionally protected activity of wearing a sweatshirt is unconstitutional and violates her First Amendment right to freedom of speech and expression.

68. It is clearly established that there is a First Amendment right to wear expressive clothing in and around a courthouse. *See, e.g., Cohen v. California*, 403 U.S. 15 (1971).

69. Defendants' restriction on Walsh's speech is content-based and is in violation of the Free Speech Clause of the First Amendment.

70. Such violations were under color of state law.

71. Walsh may, therefore, recover against Defendants pursuant to 42 U.S.C. § 1983 for the deprivation of her rights.

72. Even a momentary deprivation of First Amendment rights is an irreparable injury.

73. The violations of Walsh First Amendment rights proximately caused her damage, including mental and emotional injury.

74. Walsh has been injured, or reasonably fears imminent injury, by these constitutional violations, and Walsh is entitled to relief, including, but not limited to, compensatory damages and injunctive and declaratory relief.

### *Count II*
### Violation of the Fourth Amendment to the United States Constitution: Unlawful Detention
### (42 U.S.C. 1983 – Fourth Amendment)
### (Against Does 1, 2 & 3, Welsh and Hardman)

75. Plaintiff repeats and realleges each and every allegation in paragraphs 1-62 as if set forth fully herein.

76. At all times relevant to this Complaint, Walsh had a clearly established right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure and arrest of her person by law enforcement officers such as the Doe Defendants, Welsh, and Hardman.

77. At all times, Walsh had a liberty interest in wearing expressive clothing.

78. Does 1, 2 & 3 unlawfully and unreasonably detained Walsh on May 9 because of the words on her sweatshirt.

79. Welsh and Hardman unlawfully and unreasonably detained Walsh on May 19 because of the words on her sweatshirt.

80. Such seizures were warrantless and without probable cause.

81. There were no governmental interests to warrant such intrusion on Walsh's interests.

82. Due to Doe 1, 2 & 3, Welsh, and Hardman's unlawful conduct, Walsh is entitled to all allowable damages under law.

83. Such seizures were under color of state law.

84. Walsh may, therefore, recover against Doe 1, 2 & 3, Welsh, and Hardman pursuant to 42 U.S.C. § 1983 for the deprivation of her rights.

85. Violating Walsh's Fourth Amendment rights proximately caused her damage.

86. Walsh has been injured, or reasonably fears imminent injury, by these constitutional violations, and Walsh is entitled to relief, including, but not limited to, compensatory damages and injunctive and declaratory relief.

### Count III
### Violation of the Fourth Amendment to the United States Constitution:
### Malicious Prosecution
### (42 U.S.C. 1983 – Fourth Amendment)
### (Against Welsh and Hardman)

87. Plaintiff repeats and realleges each and every allegation in paragraphs 1-62 as if set forth fully herein.

88. At all times relevant to this Complaint, Walsh had a clearly established right under the Fourth Amendment to the United States Constitution to be free from malicious prosecution by law enforcement officers such as Welsh, and Hardman.

89. The charges brought by Defendants Welsh and Hardman stemming from the May 12 arrest resolved in Walsh's favor, having been dismissed, *inter alia* with a No Probable Cause finding and because they were unconstitutional pursuant to the May 28 order.

90. Defendants Welsh and Hardman, therefore, subjected Walsh to a seizure without probable cause.

91. Such seizure constitutes a malicious prosecution in violation of the Fourth Amendment.

92. Such malicious prosecution by Welsh and Hardman was under color of state law.

93. Walsh may, therefore, recover against Welsh and Hardman pursuant to 42 U.S.C. § 1983 for the deprivation of her rights.

94. Due to Welsh and Hardman's unlawful conduct, Walsh is entitled to all allowable damages under law.

95. Violating Walsh's Fourth Amendment rights proximately caused her damage.

96.     Walsh has been injured, or reasonably fears imminent injury, by these constitutional violations, and Walsh is entitled to relief, including, but not limited to, compensatory damages and injunctive and declaratory relief.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on each claim asserted or hereafter asserted in the Complaint, and on each defense asserted or hereafter asserted by the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A.      A declaration that JOHN DOE 1, 2 & 3, Freedman, Welsh, and Hardman's actions constituted a violation of Plaintiff's First Amendment rights.

B.      A declaration that JOHN DOE 1, 2, & 3, Welsh, and Hardman's actions constituted an unlawful seizure and arrest against Plaintiff.

C.      A declaration that Welsh and Hardman's actions constituted a malicious prosecution of Plaintiff.

D.      A preliminary and permanent injunction enjoining each Defendant from interfering with Plaintiff's right to lawfully engage in constitutionally protected expression and activity within Dedham, Massachusetts.

E.      To award Plaintiff damages for the violation of her constitutional rights.

F.      To award Plaintiff her reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable law; and

G.      To award such other relief as this Honorable Court may deem just and proper.

Dated: July 28, 2025.                    Respectfully Submitted,

/s/ Jay M. Wolman
Marc J. Randazza, BBO# 651477           Mark. Trammell
mjr@randazza.com, ecf@randazza.com      (*Pro Hac Vice forthcoming*)
Jay M. Wolman, BBO# 666053              Center for American Liberty
jmw@randazza.com                        P.O. Box 200942
RANDAZZA LEGAL GROUP, PLLC              Pittsburgh, PA 15251
30 Western Avenue                       Tel: (703) 687-6200
Gloucester, MA 01930                    MTrammell@libertyCenter.org
Tel: (978) 801-1776

                                        *Attorneys for Plaintiff.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2025 the foregoing document was served on all appearing parties or their counsel of record through the CM/ECF system.

/s/ Jay M. Wolman
Jay M. Wolman